IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DENYS ALEXANDER RIVERA,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT R. FRAKES, Director;<br>RICHARD CRUICKSHANK, Warden;<br>SCOTT ISHERWOOD, Unit Manager;<br>and RANDY WARE, Case Worker;<br><br>Defendants. | 4:16CV3180<br><br>MEMORANDUM<br>AND ORDER |

Plaintiff filed a Complaint on November 23, 2016. (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 4.) He paid the full amount of his initial partial filing fee on March 13, 2017. (*See* Docket Sheet.) The court now conducts an initial review of Plaintiff's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner within the Nebraska Department of Correctional Services ("NDCS"). He names four defendants in his Complaint: Scott R. Frakes ("Frakes"), Director of the NDCS, Richard Cruickshank ("Cruickshank"), Warden of the Nebraska State Penitentiary, Scott Isherwood ("Isherwood"), a unit manager at the Nebraska State Penitentiary, and Randy Ware ("Ware"), a former case worker at the Nebraska State Penitentiary. (Filing No. 1 at CM/ECF pp. 2, 9; Filing No. 1-2 at CM/ECF p. 7.) Plaintiff sues Defendants in their official and individual capacities. (Filing No. 1 at CM/ECF p. 3.)

On November 28, 2015, Plaintiff approached the "C-gallery" control center in Housing Unit 5 to look at the time. (*Id*. at CM/ECF p. 10.) Plaintiff alleges that Ware ordered Plaintiff to "move the hell out of his way." (*Id*.) Plaintiff told Ware that he would move once he saw the time. (*Id*.) Ware walked in front of Plaintiff and called Plaintiff and other inmates "idiots, gangsters, and dumbasses." (*Id*. at CM/ECF p. 11.) Plaintiff realized at this time that he had crossed the "red line" in the dayroom, so he stepped back behind it. (*Id*.) Plaintiff told Ware to quit bothering him. (*Id*.) Plaintiff alleges that Ware responded, "Keep your mouth shut or I'll spray you." (*Id*.) Plaintiff told Ware that he was doing nothing wrong, to leave him alone, and to quit acting like a "bitch." (*Id*.) Plaintiff alleges that he ended the conversation and stepped away to view the time without crossing the red line. (*Id*.) He claims that, without warning or directive, Ware then sprayed him with mace in his face and neck area, which affected his eyesight and breathing and left him tearing and coughing. (*Id*.) Afterward, staff escorted Plaintiff to shower and to the nurse, who took his vitals but did not flush his eyes. (*Id*. at CM/ECF pp. 12-13.) For failing to follow staff directives, staff subsequently placed Plaintiff in segregation, where he flushed his eyes and skin. (*Id*. at CM/ECF p. 13.)

Ware wrote a misconduct report finding that Plaintiff had committed three rule infractions during the incident. ([Filing No. 1-1 at CM/ECF p. 1](#).) He wrote that Plaintiff's actions and stance became aggressive and Plaintiff refused a direct order to get on the ground, after which Ware "administered three ½ to 1 second burst[s] of O.C. MK-4 spray towards [Plaintiff]." (*Id*.) Plaintiff alleges that video evidence of the incident contradicts Ware's report. ([Filing No. 1 at CM/ECF pp. 17-18](#).) Prison officials placed the incident and Ware under investigation. (*Id*. at CM/ECF pp. 14-15.)

After a disciplinary committee hearing, which Isherwood chaired, Plaintiff was found guilty of only one of three counts - swearing, cursing by calling a staff member a "bitch." ([Filing No. 1-1 at CM/ECF pp. 5-6](#).) Isherwood denied Plaintiff's request to recuse himself from the hearing. ([Filing No. 1 at CM/ECF p. 17](#).) Plaintiff alleges that Isherwood and Ware are friends and that Ware went to

Isherwood for advice after the incident. (*Id.* at CM/ECF pp. 16-17.) As discipline for the one rule infraction, Plaintiff was given three days, time served, in segregation. (*Id.* at CM/ECF p. 18.) An Appeals Board at the NDCS upheld the decision of the disciplinary committee based upon evidence presented at the hearing, including Plaintiff's own witnesses' statements that they heard him call Ware a "bitch" and Plaintiff's own statement that he "only used the language that CW Ware used." ([Filing No. 1-1 at CM/ECF p. 15](#).) Associate Warden Hurt later dismissed the misconduct report against Plaintiff "due to staff use of excessive force." (*Id.* at CM/ECF p. 21.) Ware is no longer employed at the NDCS. ([Filing No. 1-2 at CM/ECF p. 7](#).)

Plaintiff alleges that he had issues concerning his eyesight since Ware sprayed him, specifically blurriness and irritation. ([Filing No. 1 at CM/ECF p. 20](#).) Nearly two months after the incident, Plaintiff asked for a doctor to check his eyes because the eye drops he was given were not helping. (*Id.* at CM/ECF pp. 20-21.) He was eventually prescribed different eye drops with no total relief. (*Id.* at CM/ECF pp. 21-22.) A doctor later diagnosed Plaintiff with dry eyes and prescribed him a lubricating solution. (*Id.* at CM/ECF p. 22.) Plaintiff's vision remains 20/20, although he claims that it was 18/20 prior to the incident. (*Id.* at CM/ECF p. 21.) Plaintiff alleges that he was given coping skills/adult homework to deal with his incident-related mental health issues, and that he saw a psychiatrist, who prescribed him medication for the same. (*Id.* at CM/ECF pp. 24-25.)

Plaintiff claims that staff ridiculed him for being sprayed with mace. (*Id.* at CM/ECF p. 20.) He claims that staff harassed him, otherwise, and Isherwood did nothing about it. (*Id.* at CM/ECF pp. 23-24.) Plaintiff asserts that staff and Isherwood "[play] with the unit disciplinary hearing by finding anybody guilty, whether [the] inmate is innocent or not." (*Id.* at CM/ECF p. 23.) Plaintiff complains that he informed Cruickshank about the harassment and about being kept from his medical records. (*Id.* at CM/ECF p. 24.) Plaintiff alleges that Cruickshank informed him that he would need to get a discovery order to obtain

his medical log for the day of the incident and "attempted to discourage him" from filing suit by telling Plaintiff that he would definitely lose and that it would not benefit Plaintiff. (*Id.*)

Plaintiff asserts that he suffered "harm to his eyesight, unnecessary infliction of pain, harassment and slander of character, pain and suffering, mental health issues . . ., temporary skin irritation, damages to lungs and breathing" because of Defendants' actions. ([Filing No. 1 at CM/ECF pp. 28-29](#).) He seeks declaratory and monetary relief. (*Id.*)

## II. APPLICABLE STANDARDS OF REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* [28 U.S.C. §§ 1915(e)](#) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. [28 U.S.C. § 1915(e)(2)(B)](#); [28 U.S.C. § 1915A(b)](#).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *[Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007)](#); *see also [Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)](#) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *[Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)](#)

4

(quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## III.  DISCUSSION

**A.  Sovereign Immunity/Declaratory Relief**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *id.*; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Plaintiff has sued four state employees – Frakes, Cruickshank, Isherwood, and Ware- and seeks monetary relief against them. The Eleventh Amendment bars these claims against Defendants in their official capacities. Accordingly, Plaintiff's

5

claims for monetary relief against Defendants in their official capacities must be dismissed. Plaintiff's claims for declaratory relief must also be dismissed because Plaintiff is no longer in custody at the Nebraska State Penitentiary (*See* [Filing No. 10](#) (Plaintiff is currently at the Lincoln Community Correctional Center)). *See [Martin v. Sargent](#)*, 780 F.2d 1334, 1337 (8th Cir. 1985) (inmate's claims for declaratory and injunctive relief moot when he was transferred to another facility).

## B. Ware - Excessive Force Claim

Plaintiff raises an Eighth Amendment excessive force claim against Ware. "It is well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause." *[Williams v. Jackson](#)*, 600 F.3d 1007, 1012 (8th Cir. 2010), (internal quotations omitted). However, "'not ... every malevolent touch by a prison guard gives rise to a federal cause of action,' a *de minimis* application of force will not give result in a constitutional violation." *[Id](#)*. (quoting *[Hudson v. McMillan](#)*, 503 U.S. 1, 9 (1992)); *see also [Wilkins v. Gaddy](#)*, 130 S.Ct. 1177–78 (2010), ("An inmate who complains of a push or shove that causes no discernable injury almost certainly fails to state a valid excessive force claim." (internal quotation marks omitted)). Where the force applied is excessive, however, a constitutional claim may survive summary dismissal even if the resulting injury is *de minimis*. *[Wilkins](#)*, 130 S.Ct. at 1180.

Plaintiff alleges that Ware sprayed him in his face and neck area with mace without reason and without provocation. Plaintiff's allegations are corroborated by Associate Warden Hurt's decision to dismiss the misconduct report against Plaintiff "due to staff use of excessive force," and the court can infer from Plaintiff's allegations that the NDCS subsequently terminated Ware because of the incident. Plaintiff alleges that his eyesight and mental health continued to suffer for months after the incident. Liberally construed, Plaintiff has alleged sufficient facts to suggest that Ware applied excessive force in spraying him with mace. The court

6

cautions Plaintiff that this is only a preliminary determination based on his allegations, and is not a determination of the merits of his claims or potential defenses thereto.

## C. Claims Against Frakes, Cruickshank, and Isherwood

Plaintiff asserts claims against Frakes, Cruickshank, and Isherwood based upon their roles as supervisors at the prison. (*See* Filing No. 1 at CM/ECF pp. 25-26.) He claims, generally, that they displayed "deliberate indifference to [his] medical needs and unsafe conditions" in violation of the Eighth Amendment. (*Id.* at CM/ECF p. 27.) However, Plaintiff's claims fail because *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983, and because Plaintiff does not allege that Frakes, Cruickshank, and Isherwood were *personally* involved in the underlying incident nor in his care thereafter.[1] *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability).

Nor do responses, or lack thereof, to Plaintiff's grievances and complaints, namely about staff ridicule or harassment[2], constitute a violation of Plaintiff's

---

[1] Nor does Plaintiff allege that Ware was involved in his care after the incident. Moreover, and in any event, Plaintiff's allegations of deliberate indifference to medical needs amount to no more than his disagreement with treatment decisions, and "mere disagreement with treatment decisions does not rise to a level of a constitutional violation." *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010).

[2] Plaintiff alleges "Cpl. Hunt," "openly cussed at [Plaintiff] through the speaker system, made wrongful accusations [, and wrote false reports]," for which Isherwood found him guilty and imposed sanctions. (*See* Filing No. 1 at CM/ECF p. 23; Filing No. 1-2 at CM/ECF pp. 1-2.) These actions began before the current incident. (*Id.*) "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided."

constitutional rights. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances, and regulating his access to his attorney, were insufficient to state a constitutional claim). *See also*, *Martin*, *supra* at 1338 (holding that name calling, where a prison guard called plaintiff an obscene name, is not a constitutional violation). Relatedly, claims such as libel or slander, based on injury to reputation, do not state a claim for deprivation of liberty or property protected by the Due Process Clause. *See Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003) (damage to reputation alone does not implicate a protected liberty or property interest under the Due Process Clause), *cert. denied*, 124 S. Ct. 1086 (2004). Plaintiff's allegations fail to state a claim against Frakes, Cruickshank, or Isherwood.

**D. State Law Claim**

Plaintiff alleges an assault and battery claim under state law. (*See* Filing No. 1 at CM/ECF pp. 9, 26.) Because the court is permitting Plaintiff's Eighth Amendment excessive force claim to proceed against Ware, it will also permit Plaintiff's state law claim to proceed against him.

---

*Richardson v. Sherrer*, 244 F. App'x 755, 757-58 (3d Cir. 2007) (internal citations omitted). These claims arise out of unrelated events. Plaintiff will be required to prosecute these unrelated claims in a separate action and he will be required to pay a separate filing fee for that separate action. *See* Fed. R. Civ. P. 20; Fed. R. Civ. P. 21. For completeness, the court notes that Plaintiff's allegations show that he was given procedural due process protections with regard to Ware's misconduct report against him and that Plaintiff committed the infraction – swearing, cursing – for which he was found guilty.

### IV. Motion for Counsel

Plaintiff requests counsel. ([Filing No. 1 at CM/ECF p. 30](#).) The court cannot routinely appoint counsel in civil cases. *In [Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996)](#),* the Eighth Circuit Court of Appeals explained that "[i]ndigent civil litigants do not have a constitutional or statutory right to appointed counsel." Trial courts have "broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." *[Id.](#)* Having considered these factors, the request for the appointment of counsel will be denied without prejudice to reassertion.

### V. Motion for Discovery/Injunction Request

Plaintiff requests the video of the incident and an injunction to prevent Defendants from destroying the video. ([Filing No. 1 at CM/ECF p. 28](#).) The court finds discovery premature at this time. *See* NECivR 16.1(c)(2) ("No discovery may take place until [a] progression order is entered except upon motion and order.") The court also finds that Plaintiff provides no support that the video evidence will be destroyed. *See [Rosa v. Morvant, 2007 WL 120808, at \*2 (E.D.Tex. 2007)](#)* (denying preliminary injunction motion by prisoner to prohibit destruction of medical records by prison officials where plaintiff failed to show defendants were likely to destroy evidence); *[S.E.C. v. Nadel, 1991 WL 427892, at \*2 (S.D.Fla. 1991)](#)* (denying plaintiff's motion to enjoin defendants from destroying evidence because defendants had a general duty to preserve evidence and plaintiff did not bring forth any evidence suggesting defendants were likely to destroy evidence). Further, "a district court could impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *[Adkins v. Wolever, 554 F.3d 650, 653 (6th Cir. 2009)](#)*. Accordingly, Plaintiff's requests are denied.

IT IS THEREFORE ORDERED that:

1. Plaintiff's claims for monetary relief against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment. Plaintiff's claims for declaratory relief are dismissed as moot.

2. Plaintiff's Eighth Amendment excessive force claim against Defendant Randy Ware in his individual capacity and related assault and battery state law claim against Defendant Randy Ware may proceed to service of process. All other claims against all other Defendants in their individual capacities are dismissed for failure to state a claim.

3. Plaintiff's motion for counsel is denied without prejudice to reassertion. His requests for discovery and an injunction are denied.

4. The clerk of the court is directed to obtain the current address for Defendant Randy Ware from the United States Marshals Service for service of process on Defendant Randy Ware in his individual capacity. Once such address is obtained, the clerk of the court is directed to complete a summons form and a USM-285 form for Defendant Randy Ware using the address provided by the Marshals Service and forward them together with a copy of the Complaint and a copy of this Memorandum and Order to the Marshals Service for service of process on the defendant in his individual capacity. The Marshals Service shall serve the defendant in his individual capacity using any of the following methods: personal, residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01 (Reissue 2016).[3]

---

[3] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "[t]he officers of the court shall issue and serve all process, and perform all duties

5. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6. The clerk of the court is directed to file under seal any document containing the personal address for Defendant Randy Ware.

7. The clerk of the court is directed to set the following pro se case management deadline: **July 24, 2017**: check for completion of service of process.

Dated this 24th day of April, 2017.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

---

in such cases." See *Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory).